UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL NAVARRE                                              CIVIL ACTION

VERSUS                                                       NO. 05-1916

RICHARD STALDER, D.O.C.                                      SECTION "C"

**ORDER AND REASONS**

Before this Court is a petition for habeas corpus relief by Mr. Michael Navarre, pursuant to 28 U.S.C. § 2254. As grounds for relief, petitioner claims that his due process and fair trial rights were violated because: 1) the prosecution was allowed to impeach the petitioner with his post-arrest silence; 2) the trial court improperly commented on the credibility of a key state witness; 3) the trial court failed to properly instruct the jury; 4) the trial court lacked subject matter jurisdiction due to the unconstitutionality of Article 413 (C) of the Louisiana Code of Criminal Procedure; and 5) he received ineffective assistance of counsel when trial counsel adopted the state's theory of the case.

Upon a thorough review of the trial, direct appeal, and post-conviction records, the habeas petition and memoranda, and applicable law, the Court has determined that petitioner's habeas corpus petition is without merit. For the reasons set forth below, this petition is **DENIED**.

## I.     Background and Procedural History

Petitioner is a state prisoner at Louisiana State Penitentiary in Angola, Louisiana.[1] On November 11, 1999, he was convicted by a unanimous jury of one count of first degree murder. That same day the jury failed to reach a verdict on a second count of first degree murder, and the judge declared a mistrial as to that count alone.[2]  Only the first degree murder conviction is at issue in this petition.

The petitioner was sentenced to life imprisonment, without benefit of parole, probation, or suspension of sentence.[3]  The following facts are edited from the Louisiana Fourth Circuit Court of Appeal opinion:

> Bryon Doublet, Marion Jones' cousin, testified that he was visiting in the neighborhood on the evening of October 6, 1996… Michael Navarre, Reginald Collins and Brian Wright were also at the house. Mr. Doublet stated that they were all sitting in the living room when Navarre took cocaine out of his pocket, which they all snorted. Mr. Doublet described the atmosphere as cordial. He stated that Navarre and Collins decided to go buy beer. Navarre, Collins and Jones walked to the other side of the house, while the witness went to the kitchen to get a glass of water. As he walked to the bathroom, he heard gunshots. At first, he thought it was a drive-by shooting, but then heard bullets flying his way. He knelt down and crawled back to the living room. He heard Jones scream and more gunshots. Mr. Doublet attempted to get out the back door, but was unable to do so as it was locked. He then tried to push the air conditioner out of the window. As he did, he turned and saw Navarre standing behind him, with a nine-millimeter gun. Mr. Doublet was shot in the chin, head and arm. He said after being shot twice, he fell to the ground. Navarre then shot him two more times. When the gun either jammed or ran out of bullets, Navarre hit him in the head with the gun. Mr. Doublet testified that he jumped up and grabbed the gun, and he and Navarre scuffled. After Navarre regained the gun, Mr. Doublet ran out of the house. On his way out, Mr. Doublet saw Navarre fooling with the gun in the bathroom. He also saw a baby in the bedroom, Reginald Collins dead on the floor, and Brian Wright by the bar as he left the house.
> 
> Mr. Doublet testified that he ran upstairs to his aunt's apartment. He knocked on the door, but no one answered. He then ran to his friend's house around the corner on Delachaise Street. He told his friend that he had been

---

[1] Fed. Rec. Doc. 1, Petition for Writ of Habeas Corpus, *Navarre v. Cain*, No. 05-1916.
[2] Petitioner later pled to manslaughter on the additional count and was sentenced to 40 years. The Court notes that petitioner's appeal was delayed during this process.
[3] State Rec. Vol. 1, p. 65, No. 386-622, *State v. Navarre* Sentence, March 29, 1999. See also Sentencing Transcript, State Rec. Vol. 3.

shot, and 911 was called. Shortly thereafter, the police and an E.M.S. unit arrived. Mr. Doublet stated that he told the police that "Red Mike" shot him, explaining that this was Michael Navarre's nickname. He was taken to Charity Hospital where he received treatment for his gunshot wounds. A police officer came to see him while he was in the hospital, but he was not able to give a statement because his jaw was wired. He was able to identify Navarre from a photographic line-up as the person who shot him. After he was released from the hospital, Mr. Doublet identified Navarre in a second photographic lineup, and also gave a statement to the police. He stated that he informed the police that Brian Wright was in the residence at the time of the shooting. Mr. Doublet identified Wright in a photographic lineup. The witness acknowledged using Valium and heroin the day prior to the shooting. He also admitted to a prior conviction for possession with intent to distribute marijuana.

Marvin Hartford testified that on October 7, 1996, he went to Marion Jones' house to see his cousin, Reginald Collins. Mr. Hartford explained that he had been sleeping earlier on the evening of October 6, 1996 when Collins came to see him. When he arrived at Jones' house, she opened the door. He could see Collins standing behind Jones, and Navarre nearby. As he came through the door, Navarre shot him in the face. Mr. Hartford testified that Navarre then shot Collins, who fell. Navarre stood over Collins and shot him again. Navarre then walked into the next room and found Jones. The witness heard Jones scream and a gunshot. Mr. Hartford testified that Brian Wright was standing in the living room, armed with a gun, watching Navarre shoot everyone. Mr. Hartford stated that he was able to escape, and ran home. He saw his cousin, Tamika Butler, and told her that Navarre had shot him. By that time, his tongue was swelling up and it was getting difficult to talk. An ambulance was called, and Mr. Hartford's father accompanied him to the hospital. After his release from the hospital, he gave the officers a statement. Mr. Hartford identified Navarre as the person who shot him and Reginald Collins. He also identified a photograph of Brian Wright.

Detective Daniel Jewel testified that he and his partner, Officer Ricky Bonin, responded to a call of a homicide at 4205 Tonti Street at 1:50 am. on October 7, 1996. Detective Jewel testified that when he and his partner arrived on the scene, they observed two blood trails coming out of the front door and going opposite ways. Upon opening the door enough to see into the front room, they heard a small child crying. They turned on the light and saw splatters of blood on different parts of the furniture and wall. They observed a black male lying in the threshold between the living room and the bedroom. There was a small child kneeling on the ground next to the body of a black woman. Detective Jewel picked up the child while Officer Bonin checked the rest of the house. As Detective Jewel exited the house, the child's aunt approached him, and he gave the child to the woman, telling her to get out of the house. The officers secured the building, notified E.M.S., and requested a homicide unit… Eleven casings, a black metal magazine, one bullet, one copper fragment and two lead fragments were located about the house. All of the casings were nine-millimeter Lugar casings. Narcotics and narcotics

paraphernalia were found on the table in the living room, which included a brown plate, a razor blade, one white pen tube, one black pen tube, and a glassine envelope…

    Detective Gary Marchese… entered the residence, which was set up similar to a horseshoe shape. The first room was the living room. The detective observed blood on the doorknob and along the door, and a blood splatter on the wall. A black male, with several gunshot wounds to his chest, was lying in the doorway to the bedroom. His feet were in the living room and his upper torso was in the bedroom. A bloody five dollar bill was crumpled up between the victim's head and hand. The detective observed several spent casings in the living room and bedroom, and a bullet hole in the living room wall. The second victim, a black female, was found in the bedroom closet. She had been shot in the head and the pelvic area. Detective Marchese testified that there were blood swipes on the wall of the hallway leading to the kitchen. After the kitchen, there was another room furnished with only a table and chair that was at the front of the house. The detective observed blood along a window where it appeared that someone had been trying to pull the air conditioner out. On the table, there was a plate with a white powder that he believed to be cocaine. A magazine for an automatic weapon was on the floor near the table, along with three spent casings. There were two bullet holes in the wall near the air conditioner unit.

    Detective Marchese testified that he later leaned that two other persons had been shot and fled the scene. He went to the hospital on October 8, 1996, to meet with Marvin Hartford and Bryon Doublet. Both men were in the intensive care unit. Detective Marchese attempted to conduct photographic lineups with the two men. Neither man could speak; however, both were able to identify by pointing or nodding Michael Navarre as the man who shot them. Detective Marchese interviewed Doublet after Doublet was released from the hospital, and conducted another photographic lineup. Doublet again identified Navarre as the person who shot him. Detective Marchese met with Marvin Hartford on October 19, 1996. Hartford identified Navarre from a photographic lineup as the person who shot Reginald Collins and himself. A search warrant was obtained for Navarre's, but no evidence was recovered…

    [A]ll the casings were fired by one common weapon, a nine-millimeter gun… [T]he bullets were fired from the same weapon…

    Charles Johnson testified that he lived above Marion Jones' apartment at 4205 Tonti Street. He stated that he, Bryon Doublet and Marion Jones were cousins. Mr. Johnson testified that he knew Navarre as a regular visitor at Jones' apartment. On October 6, 1996, he and Doublet spent the day together. Doublet left the witness' apartment at approximately 11:50 p.m. to go home, but apparently missed his buss and went to Jones' apartment. Johnson further testified that while he was fixing himself something to eat later that night, he heard gunshots and noises coming from Jones' apartment. Doublet knocked on the door a few minutes later. Doublet told Mr. Johnson that he had been shot. Mr. Johnson did not open the door, but did call the police…

Tamika Butler, Marvin Hartford's cousin, testified that she was at home on October 7, 1996, when Hartford came home. The door banged against the wall when he entered, and she went to see what was happening. Hartford's face was full of blood. He had been shot. Hartford told her that Michael Navarre, "Red Mike," had shot him. She said she could barely hear what Hartford was saying, but she could understand him.

Naja Jacque, Navarre's sister, testified that in 1996, her brother owned a grocery store on South Galvez Street. At approximately 8 a.m. on October 6, 1996, Navarre picket upper up and they went to open the grocery store. Navarre left the grocery around 9:30 a.m., and returned at approximately 6 p.m. She left to go home at about 6:30, but Navarre and her nephew, Tory, stayed at the grocery. She did not see Navarre any more that day, but spoke to him by phone at about 1 a.m. on October 7, at his girlfriend's house. She explained that Navarre had been staying at his girlfriend's house because their newborn baby had been sick…

Toryan Henry, the defendant's nephew, worked at Navarre's grocery store in October of 1996, and worked the evening prior to this incident. At approximately 6 p.m., Navarre came into the store. Navarre and the witness worked together until about 12:30 a.m., when they closed the store. Navarre took the witness home where he lived with his aunt, Danette Henry…. Danette stated that she saw Navarre at approximately 12:30 a.m. on October 7, 1996, when the defendant dropped Toryan off at her house.

Lineta Dixon, Navarre's girlfriend and the mother of two of his children, testified that Navarre arrived at her house at approximately 12:45 a.m. on October 7, 1996. He was staying at her house because the baby had been sick. The witness testified that she and Navarre had stayed up late that night because the baby could not sleep. She recalled that Navarre's sister, Naja, called their house at approximately 1 a.m. Navarre remained at her house until the next morning.

Michael Navarre, the defendant, testified that he spoke with his brother on the morning of October 7, 1996, and learned that he was wanted for murder. He stated that he knew Marion Jones, Reginald Collins, Marvin Hartford and Bryon Doublet, but denied killing Jones and Collins and shooting Hartford and Doublet. Navarre testified that he did not have any reason to kill them. They were his friends. Navarre stated that on the morning of October 6, 1996, he picked up his sister, Naja, from her house and went to the grocery store. After opening, he left the store and returned later in the day. He worked at the store that night with his nephew, Tory. They closed the store at about midnight. He took Tory home and then went to Lineta's house because the baby, Monet, was sick. He stayed at Lineta's house that night. Navarre acknowledged that he was [a] frequent visitor to Marion Jones' house.[4]

---

[4] State. Rec. Vol. 5, No. 2000-KA-2521, *State v. Navarre,* 798 So.2d 338 (La.App. 4 Cir. 9/26/2001), not designated for publication.

On September 26, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[5] The Louisiana Supreme Court denied writs on October 25, 2002.[6] Petitioner filed an application for post-conviction relief on December 30, 2002,[7] which was denied on March 23, 2003,[8] and after resubmission was denied again on September 29, 2003.[9] The Louisiana Fourth Circuit Court of Appeal denied writs on December 19, 2003,[10] and again on April 23, 2004.[11] Petitioner filed a writ with the Louisiana Supreme Court on May 20, 2004, which was denied on April 8, 2005.[12] Petitioner filed his federal application for habeas corpus on April 30, 2005.[13]

## II.     Jurisdiction

Jurisdiction is proper under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the petitioner is "in custody" under the conviction he is attacking.[14] Petitioner Navarre is confined at the Louisiana State Penitentiary in Angola, therefore jurisdiction is proper.

## III.    Venue

Venue is proper under AEDPA in the district where the inmate is in custody or where the state court conviction and sentence were obtained.[15] Petitioner Navarre was convicted and sentenced in Orleans Parish, therefore venue in the Eastern District of Louisiana is proper.

---

[5] *Id.*
[6] State Rec. Vol. 5, 827 So.2d 1173, *State v. Navarre,* 2001-KO-3040 (La. 10/25/2002).
[7] State Rec. Vol. 6, Application for Post-Conviction Relief.
[8] State Rec. Vol. 6, Judgment, No. 386-622, *State v. Navarre,* March 26, 2003.
[9] State Rec. Vol. 6, Judgment, No. 386-622, *State v. Navarre,* September 29, 2003.
[10] State Rec. Vol. 6, 2003-K1994, December 19, 2003.
[11] State Rec. Vol. 6, No. 2004-K-0446, April 23, 2004.
[12] State Rec. Vol. 6, 2004-KH-1397, April 8, 2005.
[13] Fed. Rec. Doc. 1, Petition for Writ of Habeas Corpus, *Navarre v. Cain*, No. 05-1916.
[14] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).
[15] 28 U.S.C. § 2241(d).

**IV.	Timeliness**

The state submits that the petition is untimely, but after reviewing the record the Court disagrees. Generally speaking, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a petitioner bring Section 2254 claims within one year of the date on which his conviction became final.[16] Pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's one-year limitation period for seeking federal habeas corpus relief commenced running on the date the judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review."

Petitioner's direct appeal was denied by the Supreme Court of Louisiana on October 25, 2002 and he did not appeal to the United States Court Supreme Court. Petitioner's conviction became final ninety days after the Supreme Court of Louisiana denied his application for supervisory writs, on January 23, 2003. On this date, the one-year statute of limitations for filing a federal habeas corpus petition began to run.[17] However, AEDPA's one-year statute of limitations is tolled for the period during which a properly filed application for post conviction relief or other collateral review attacking a conviction or sentence is pending in state court.[18]

Petitioner filed his motion for post conviction relief on December 30, 2002, before his direct appeal writs were denied by the Louisiana Supreme Court, so no time had elapsed. The statute of limitations was tolled while petitioner's application for post-conviction relief was pending in the state courts. The Court acknowledges that petitioner had multiple post-conviction submissions, each of which was denied, but none was

---

[16] 28 U.S.C. § 2244(d).
[17] See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); see also *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).
[18] See *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2).

denied as untimely. Out of an abundance of caution, this Court construes any tolling ambiguities in favor of a petitioner. The Louisiana Supreme Court denied writs on petitioner's post-conviction relief on April 8, 2005. On that day the statute began to run. Petitioner filed his federal habeas petition on April 30, 2005, after 22 days. The petitioner had not exhausted the one-year period for filing for habeas relief. Therefore, the Court finds the petition timely and will address the petition on the merits.

### V.     Exhaustion

Under AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief from the federal courts.[19] "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[20] Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal habeas petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.[21]

Petitioner presents five claims for review in his federal habeas petition as listed above.  Each of these claims was raised in a procedurally proper manner in his application for writs to the Louisiana Supreme Court on appeal (where he raised the first two claims of error) or in his application for post conviction relief (where he raised the last three claims of error). Accordingly, petitioner has satisfied AEDPA's exhaustion requirement.  Therefore, the Court will address petitioner's claims on the merits.

---

[19] 28 U.S.C. § 2254(b)(1)(A).
[20] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).
[21] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

## VI. Standard of Review

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law.[22] Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).[23] As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[24] The United States Supreme Court has noted the following:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams v. Taylor*, 529 U.S. 362 (2002) that an unreasonable application is different from an incorrect one.[25]

---

[22] 28 U.S.C. § 2254(d): An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
[23] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).
[24] 28 U.S.C. § 2254(d)(1).
[25] *Bell v. Cone*, 535 U.S. 685, 694 (2002), internal citations omitted.

As to questions of fact, factual findings are presumed to be correct, and a federal court will give great deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[26]

## VII.   Law & Analysis

**(1) Petitioner argues that the prosecution was allowed to impeach the petitioner with his post-arrest silence.**

This argument was raised on appeal. The Louisiana Fourth Circuit Court of Appeal addressed this issue at length:

> Louisiana Code of Criminal Procedure art. 770(3) provides that if the judge, district attorney or a court official, either directly or indirectly, makes an impermissible reference to the failure of the defendant to testify, a motion for mistrial must be granted, if requested by the defense. [T]he Louisiana Supreme Court pointed out that Article 770 does not apply to references to a defendant's post-arrest silence by the prosecutor or by witnesses, but only applies to references to the defendant's failure to testify at trial. Rather… Art. 771 is the applicable provision concerning the proper remedy where reference is made to a defendant's post-arrest silence. Under that codal article, the trial court has the discretion of granting a mistrial or simply admonishing the jury, upon the request of the defendant, where the prosecutor or a witness makes a reference to a defendant's post-arrest silence. A mistrial is a drastic remedy, authorized only when the defendant has suffered substantial prejudice.
> In the case at bar, the trial court recognized that the prosecutor had not completed her question when Navarre's attorney objected. After a bench conference, the trial court determined that while the prosecutor did not intend to impeach the defendant's post arrest silence, the beginning of the prosecutor's question was improper. The trial court admonished the jury to disregard the question and denied the motion for mistrial. As the trial court determined that there was no intent to impeach Navarre's post-arrest silence, it was within its discretion when it chose to admonish the jury and deny the motion for mistrial.[27]

---

[26] 28 U.S.C. § 2254(d)(2); see also *Hill v. Johnson*, 210 F.3d 481, 485; 28 U.S.C. § 2254(e)(1).
[27] State Rec. Vol. 5, No. 2000-KA-2521, *State v. Navarre,* 798 So.2d 338 (La.App. 4 Cir. 9/26/2001), not designated for publication, internal citations omitted.

The record supports that the prosecution was not allowed to impeach the petitioner with his post-arrest silence. When the defense immediately moved for a mistrial, a bench conference was held outside the hearing of the jury.[28] The trial judge then addressed the following remarks to the jury:

> Alright, with regard to the last, the beginning of the question that the defense had objected to, the Court's impression is that the State had not completed the question when the defense objected and moved for a mistrial. But the way the question began was legally improper. So the Court is going to sustain the objection and instruct you, ladies and gentlemen, just disregard the way the question began. And don't take any inference from it one way or another. Just totally disregard it.[29]

The trial judge exercised the discretion granted to him under Louisiana law to deny a motion for mistrial, and admonished the jury to ignore the beginning of a question that it deemed improper. The Court defers to the state court decision, as petitioner failed to demonstrate any error that was contrary to, or involved any unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

**(2) Petitioner argues that the trial court improperly commented on the credibility of a key state witness.**

This argument was raised on appeal. The Louisiana Fourth Circuit Court of Appeal addressed this issue at length:

> Louisiana Code of Criminal Procedure art. 772 provides that a judge shall not in the presence of the jury "comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved or refuted." The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. Thus, if the effect of a comment is to permit a

---

[28] State Rec. Vol. 3, Trial Transcript, p. 48.
[29] *Id*.

- 11 -

> reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal… Art. 772 does not apply to statements of the trial judge's reasons for ruling on objections relating to the admissibility of evidence or to explain the purpose for which evidence is offered or admitted, provided the remarks are not unfair or prejudicial to the defendant.
>
> In the present case, the record does not reflect that defense counsel objected to the improper comment. Instead, defense counsel's remarks went to the issue of whether he would be allowed to obtain a transcript of Doublet's statement. Therefore, this issue has not been preserved for review on appeal.
>
> Additionally, this argument lacks merit because the trial court's statement went to the issue of whether the defendant was entitled to receive a transcript of Doublet's statement. The trial court decided that because the witnesses themselves were available to testify at trial, the statement was not relevant. Such statements are not improper comments on the evidence.[30]

The Court notes that while the issue of whether the judge made any improper comment on witness credibility had not been preserved for appeal, the appellate court nevertheless denied the claim on the merits. The comment made by the judge, after defense counsel requested a transcript of the statement made by Mr. Doublet, was "[I]t's only, it's only relevant if it contradicts what that witness testified in court. What you've asked him is exactly the same thing that witness testified to here in court." The record supports that the comment was not made to express any opinion about whether either witness was credible, but instead was an explanation of a denial of the defense's motion to produce a transcript because the trial judge ruled it irrelevant.

The Court defers to the state court decision, finding nothing contrary to, or involving any unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

---

[30] State. Rec. Vol. 5, No. 2000-KA-2521, *State v. Navarre,* 798 So.2d 338 (La.App. 4 Cir. 9/26/2001), not designated for publication, internal citations omitted.

**(3) Petitioner argues that the trial court failed to properly instruct the jury.**

This argument was raised in petitioner's application for post-conviction relief and found to be without merit.

Generally, the submission of improper jury instructions in a state criminal trial is not a basis for federal habeas relief.[31] Federal habeas relief is warranted only where the petitioner demonstrates that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."[32] The court's instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record."[33] The court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."[34] Any errors are subject to harmless-error analysis.[35]

Here, petitioner argues that the judge improperly defined reasonable doubt when instructing the jury. Petitioner claims the charge failed to state that reasonable doubt could arise from a lack of evidence, as required in Article 804.[36] Further, the petitioner

---

[31] See *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Weeks v. Scott*, 55 F.3d 1059, 1065 (5th Cir.1995).
[32] *Estelle*, 502 U.S. at 72.
[33] *Id.*
[34] *Id.*
[35] *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir.2002).
[36] Art. 804. Same; charge as to presumption of innocence, reasonable doubt, and several grades of offense
A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
B. When there are several grades of an offense contained in a single count, the court shall charge the jury as to each grade of which the defendant could be found guilty. The court shall in that case also charge the jury that if it has a reasonable doubt as to any or all grades of the offense charged it shall find the defendant not guilty of that grade, or all grades of the offense, as the case may be.
LSA-C.Cr.P. Art. 804.

complains the trial judge erred by limiting the jurors in his charge to the evidence before them. The following charges on reasonable doubt and evidence are excerpted from the jury instructions:

> Alright, ladies and gentlemen, the defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt... The burden is upon the State to establish the defendant's guilt beyond a reasonable doubt. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty. While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt.
> Reasonable doubt is doubt based upon reason and common sense and is present when after you have considered all of the evidence, you cannot say that you are firmly convinced of the truth of the charge against the defendant. Likewise, if the State has proved the guilt of the defendant to your satisfaction and beyond a reasonable doubt, you should return a verdict of guilty… In order to find the defendant guilty as charged, that is guilty of first degree murder, you would have to find that the State has proven to your satisfaction and beyond a reasonable doubt, the necessary elements that the defendant in fact, killed the victim, that when he killed the victim or victims, because you have to reach a separate verdict as to each count, that when he killed the victim he had a specific intent to kill the victim or inflict great bodily harm upon the victim, and he also had the specific intent to inflict great bodily harm on more than one person. If you do not feel the State has proven those necessary elements to your satisfaction and beyond a reasonable doubt, then there are what are known as lesser or responsive verdicts that you could consider…
>
> Now as jurors, you are the exclusive judges of the facts of this case… So you are to find from the evidence which facts have been proved and which facts have not been proved… You receive the evidence from the witnesses and you received the law from the court and it is your duty to accept the law and to apply it as given by the court. As jurors, you are not to be influenced by sympathy, passion, prejudice or public opinion…[37]

Petitioner does not demonstrate that the allegedly erroneous instruction so infected the trial as to violate his constitutional rights. The record supports that considering the trial record and the jury instructions as a whole, the judge did not improperly instruct or restrict the jury. In addition, the Court finds no reasonable

---

[37] State Rec. Vol. 3, Trial Transcript, p. 51-54.

likelihood that the jury applied the instructions in a way that violates the United States Constitution. The petitioner was charged with two counts of first-degree murder. The jury unanimously returned a verdict of guilty as to one count only, thereby demonstrating their understanding of the definition of reasonable doubt.

The Court defers to the state court decision, finding nothing contrary to, or involving any unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

**(4) Petitioner argues that the trial court lacked subject matter jurisdiction due to the unconstitutionality of Article 413 (C) of the Louisiana Code of Criminal Procedure.**

This argument was raised in petitioner's application for post-conviction relief and found to be without merit.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[38]  A federal habeas court does not sit as a "super" state supreme court to review errors under state law.[39]

In Louisiana, a criminal defendant must assert a due process or equal protection claim regarding the selection and composition of a grand jury in a motion to quash filed prior to trial or waive any complaint in that regard.[40]  The petitioner did not file a motion to quash the indictment, and so is now procedurally defaulted from raising this claim.

---

[38] *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999), quoting *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); see also *Molo v. Johnson*, 207 F.3d 773, 776 (5th Cir. 2000); and *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997).
[39] *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).
[40] *Deloch v. Whitley*, 96-1901 p. 2 (La.11/22/96), 684 So.2d 349, 350.

However, petitioner would not be entitled to relief even had the claim not been defaulted. Louisiana law holds that:

> The statute and codal provisions in *Dilosa* were declared unconstitutional solely because they were local laws in violation of the state constitution, La. Const. art. III, § 12(A). "The constitutional prohibition against local laws which underlies the *Dilosa* decision simply reflects a policy decision that legislative resources and attention should be concentrated upon matters of general interest and that purely local matters should be left to local governing authorities." Thus, "the substantial rights of a criminal defendant are not affected per se solely because he is indicted by a grand jury selected pursuant to local laws passed by the Louisiana State legislature." Where a criminal defendant fails to show that his substantial rights were affected, he is not entitled to relief.[41]

Petitioner's argument is grounded in state law, which bars review by a federal court in the absence of a violation of substantial federal constitutional rights. Petitioner fails to establish that his federal constitutional rights were violated during the impaneling of the grand jury.

The Court finds nothing contrary to, or involving any unreasonable application of, federal law, and so defers to the state court decision denying relief for petitioner's claims regarding the unconstitutionality of Article 413 (C).

**(5) Petitioner argues that he received ineffective assistance of counsel when trial counsel adopted the state's theory of the case.**

This argument was raised in petitioner's application for post-conviction relief and found to be without merit.

A claim of ineffective assistance of counsel is a mixed question of law and fact.[42] Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[43]

---

[41] *State v. Harris*, 892 So.2d 1238, 1261, 2001-2730 (La. 2005), citations omitted.
[42] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), cert. denied, 538 U.S. 969, 123 S.Ct. 1768 (2003).
[43] 28 U.S.C. § 2254(d)(1).

In *Strickland* the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.[44] A petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.[45] "Counsel's performance is deficient if it falls below an objective standard of reasonableness."[46] Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.[47] Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.[48] In order to prove prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[49]

Petitioner argues that counsel for the defense abandoned his original defense and adopted the state's theory of the case, adding that the petitioner was under the influence of cocaine at the time of the shooting. The record does not support this claim. Before and during trial, counsel for the defense offered multiple pretrial disclosure and suppression motions. The defense vigorously cross-examined each of the state's witnesses, including the police officers, the two living shooting victims, and investigators testifying regarding ballistics. The defense offered multiple witnesses who provided petitioner with an alibi, namely his niece, nephew, and his girlfriend. The defendant testified that he was not present at the scene of the crime. The jury apparently believed the state's witnesses and returned a unanimous verdict of guilty of first degree murder as to one of the counts against the petitioner.

---

[44] *Strickland v. Washington*, 466 U.S. 668 (1984).
[45] *Id.* at 697.
[46] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).
[47] *Strickland*, 466 U.S. at 689.
[48] *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).
[49] *Strickland*, 466 U.S. at 694.

It was after the conviction that counsel filed a motion for a post-judgment verdict of acquittal and reduction of the verdict to manslaughter. In that motion, defense counsel argued that the state had not proved specific intent to kill beyond a reasonable doubt, because the evidence supported that Navarre's actions were a result of "extreme provocation caused by a cocaine induced psychosis."[50] Only the closing arguments to which objections were made were included in the transcript; none shows any attempt by defense counsel to adopt the state's argument. A complete transcript of the closing arguments is unnecessary. The judge instructed the jury during the trial that the prosecution's and defense's opening and closing statements were not evidence. There is no evidence that defense counsel suggested to the jury that Navarre may have shot the victims while in a psychotic state induced by cocaine. However, had the alleged statements been made in closing statements, while asking for a responsive verdict of manslaughter instead of a conviction of first degree murder, the statements would not be evidence. Viewing defense counsel's behavior in light of the facts and circumstances of this case, the Court finds that the petitioner has failed to overcome the strong presumption that counsel's behavior fell within the wide range of reasonable representation. In addition, petitioner fails to establish any prejudice to him as a result of counsel's performance.

The petitioner fails to satisfy the *Strickland* test that counsel's behavior was deficient and prejudicial. The Court finds nothing contrary to, or involving any unreasonable application of, federal law, and so defers to the state court decision denying relief for petitioner's claims of ineffective assistance of counsel.

---

[50] State Rec. Vol.4, Motion for Post Verdict Judgment of Acquittal and Reduction of Verdict to Manslaughter. See also State Rec. Vol. 5, Judgment, No. 386-622, May 20, 2003, where the trial judge stated the motion had been filed and denied on March 26, 1999.

- 19 -

## VIII.  Conclusion

Having considered the complaint, the record, and the applicable law, it is determined that petitioner has failed to demonstrate that his state conviction and sentence present grounds for the relief requested.  Accordingly, **IT IS ORDERED** that the petition of MICHAEL NAVARRE for writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**.  Judgment will be entered accordingly.

New Orleans, Louisiana this 7th day of June, 2007.

_____
HELEN G. BERRIGAN
U.S DISTRICT JUDGE